UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-cr-287 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| PATRICK MASON, JR., | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Patrick Mason, Jr. ("Mason") to revoke the detention order. (Doc. No. 31 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 32 ["Opp'n"].) Mason has not requested a hearing, and the Court finds that the present motion may be considered on the parties' written submissions. As part of its *de novo* review, the Court reviewed the following:

(1) Criminal Complaint in this matter (Doc. No. 1);

(2) Pretrial Services Report, filed April 24, 2020 (Doc. No. 3);

(3) Order on Government's Motion for Detention, filed May 1, 2020 (Doc. No. 8);

(4) Order Setting Conditions of Release (Doc. No. 10);

(5) The Release Status Report, filed May 21, 2020 (Doc. No. 13);

(6) The transcripts of the Bond Violation Hearing Proceedings, held on May 29, 2020 and June 4, 2020 (Doc. Nos. 26 and 30);

(7) Exhibits (police reports) from Bond Violation Hearing (Doc. No. 32-1 to 32-4);

(8) Order Revoking Bond, filed June 11, 2020 (Doc. No. 19);

(9) The indictment, filed June 11, 2020 (Doc. No. 20); and

(10) Mason's motion for *de novo* review and the government's opposition.

### I. BACKGROUND

On April 22, 2020, a criminal complaint issued charging Mason with possession of a firearm and/or ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g). (Doc. No. 1.) At the conclusion of the detention hearing on May 1, 2020, Magistrate Judge Thomas M. Parker denied the government's motion for detention and set bond at $20,000 unsecured. (Doc. No. 8.) Magistrate Judge Parker also set conditions of release, including the requirement to submit to the supervision of United States Pretrial Services and to report, as soon as possible, any contact with law enforcement. (Doc. No. 10 at 25.) Additionally, Mason was subject to electronic monitoring and a curfew that precluded him from leaving his grandparent's residence after 6:30 pm and before 8:00 am. (*Id*. at 26; Doc. No. 30 at 124–25.)

On May 21, 2020, the Court received a release status report prepared by Pretrial Services. (Doc. No. 13.) According to the status report, on May 18, 2020, Mason left his home without authorization at 9:02 pm. Inquires by Pretrial Services revealed that Mason had engaged in a verbal argument with his mother and the police were called by Mason's grandparents, and that, in the course of the verbal altercation, Mason left the house. Police advised Mason to return to his room or he would be taken to a hospital for psychiatric treatment. (*Id*. at 41–42.)

The report also provided that the following day (May 19, 2020), Mason's sister and girlfriend went to the Oakwood Village Police Department and made separate complaints about defendant. Mason's girlfriend reported that Mason had choked her and placed a pillow over her face to prevent her from screaming. Mason's sister reported that Mason had been calling and harassing her. The police responded to Mason's residence to obtain a statement, at which time Mason denied knowledge of the incidents. (*Id*. at 42.) Despite the fact that Mason and his

2

probation officer typically spoke several times a day, and notwithstanding the fact that Mason spoke with his probation officer on May 20, 2020, Mason did not report the May 19, 2020 interaction with law enforcement to pretrial services until May 21, 2020 (and only after pretrial services inquired). (*Id*.; Doc. No. 30 at 161–62.)

Mason was taken into custody, and on May 29, 2020, Magistrate Judge David A. Ruiz conducted a preliminary/bond revocation hearing, pursuant to 18 U.S.C. § 3148, at which time he heard testimony from Mason's pretrial services officer Kara Cabanes, received exhibits, and entertained argument from counsel. (Doc. No. 30 at 136.) In addition to providing testimony regarding her interactions with Mason, Cabanes confirmed that, due to the recent family disturbances, Mason was no longer permitted to reside at his grandparent's residence. At Mason's and his counsel's request, the Magistrate Judge continued the hearing to afford counsel an opportunity to attempt to locate an alternative residence for Mason before the Magistrate Judge made a final determination on the bond violations. (*Id*. at 174–75.)

Counsel was unable to secure suitable alternative accommodations for Mason and, at the conclusion of the continued hearing on June 4, 2020, the magistrate judge found that Mason violated the conditions of pretrial release, ordered his bond revoked, and remanded him into the custody of the U.S. Marshal. (Doc. No. 19.) Specifically, the Court held:

> [T]he Court has considered the provisions of 18 U.S.C. Section 3148, 18 U.S.C. Section 3142, and in general the Bail Reform Act, as well as the underlying charges against Mr. Mason and the Court's previous order that permitted Mr. Mason's pretrial release on a $20,000 bond as well as standard and special conditions of release.
>
> Pursuant to all the information provided to me during the hearing, I make the following findings: I find that there's clear and convincing evidence that Mr. Mason has violated the terms of his bond and his pretrial release. In making that determination, I find that there's clear and convincing evidence that he violated

the location monitoring program as well as he had contact with law enforcement personnel without reporting those contacts to pretrial services.

But more pertinent to this Court's determination as to whether Mr. Mason's bond should be continued or revoked, the Court further finds that the law enforcement contacts that Mr. Mason had relate to a verbal argument and disruption with a family member while at his residence living with his grandparents.

Second, he was accused of a violent – domestic violence incident where he was accused by a girlfriend of choking her and placing a pillow over her face to keep her from screaming and keeping others from hearing her.

He was also accused by a sister of threatening her as well as threatening family members and harassing her.

And although he maintained frequent contact with pretrial services, the Court notes that he failed to report law enforcement contact with respect to the alleged domestic violence as well as threatening and harassing allegations with respect to a family member.

In reviewing all the information presented to me during the hearing, I concur with the testimony and recommendation from pretrial services; in particular, that the nature and circumstances of the violations that Mr. Mason has committed are escalating and pose a clear and substantial threat to others in the community.

I'll note that with respect to the alleged domestic violence and alleged harassing actions towards the family member, that Mr. Mason has not been charged with any federal, state, or local crime in connection with those incidents. Therefore, this Court is not making a determination based upon a probable cause finding that he committed a federal, state, or local crime in that he's not been charged or indicted with respect to those incidents. And this Court finds that there was insufficient evidence for me to make a determination that probable cause, in fact, exists to support those – the commission of a federal, state, or local crime.

But as noted, I find clear and convincing evidence that he violated the terms of his condition of release, and I then make the further finding that there are not suitable conditions or combinations of conditions that would assure the safety of the community if Mr. Mason were permitted to be released on his current bond and conditions, or even modified conditions.

***

After considering the statutory factors set forth in Section 3142(g), I find that the grounds for revoking the terms of pretrial release are based on the following:

The weight of the evidence against the defendant in connection with the underlying allegations against him as well as the weight of the evidence of the danger that he poses to members of the community is strong.

In the underlying case he's subject to a lengthy term of incarceration if convicted.

I've also considered his prior criminal history, which includes four convictions for burglary, multiple capiases for failing to appear, and a 2017 domestic violence conviction, in which the defendant was convicted of assaulting a girlfriend by chocking her, which is – which demonstrates a history of violence.

The Court has also considered whether there would be a suitable placement for Mr. Mason in the community if he were permitted to continue his pretrial release. And as counsel for the defense has indicated, there have been at least three residences that have been identified as potential residences for Mr. Mason, and none of those three residences have been – none of the participants in those residences have indicated that they would permit Mr. Mason to reside at those locations. Therefore, the Court finds that there's lack of stable residence for Mr. Mason.

The Court also noted that he's failed to appear in court as ordered in previous cases and he's violated probation and parole or supervised release in connection with his prior criminal history.

I've taken into account the escalating nature of the threat and danger that Mr. Mason's activities have proven to members of his family and significant others, the Court finds that the foregoing statutory factors demonstrate that he poses a danger to the safety of others and the community.

In addition, when considering how a person will comply with terms of pretrial release, generally the Court must make a determination based upon historical behavior. In this instance, we have a much more recent example of the defendant's willingness and ability to comply with terms of pretrial release.

Based upon the Court's findings here and the evidence that the defendant has not only posed a threat and danger to members of his family but to a significant other as well as has violated the terms of his pretrial release, the Court finds that Mr. Mason would be unlikely to abide by any condition or combination of conditions of release should he at this time be permitted to continue his pretrial release.

Therefore, in this Court's – therefore, it's this Court's determination that Mr. Mason's bond be revoked and that he be detained pending further proceedings in this case.

(Doc. No. 26 at 96–102; *see* Doc. No. 19 [memoralizing oral ruling].)

## II. DISCUSSION

Mason now seeks review and revocation of the magistrate judge's order revoking bond and imposing detention. Title 18 U.S.C. § 3145(b) permits a defendant to seek review of a pretrial detention order of a magistrate judge. When the Court "acts on a motion to revoke or amend a magistrate judge's detention order, [it] acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992).

In making this *de novo* review, the Court is mindful that it must order a defendant detained if no condition will reasonably assure his appearance at trial or if there is a serious risk to the safety of others or the community. 18 U.S.C. § 3142(e). A finding that no conditions will reasonably assure the safety of another person or the community must be supported by clear and convincing evidence. § 3142(f).

While conceding the violations of his bond conditions, Mason insists that the curfew violation and his interactions with law enforcement between May 18, 2020 and May 20, 2020 were *de minimis*. (Mot. at 180.) He also notes that he was truthful with pretrial services about police involvement when his probation officer inquired about the May 18, 2020 curfew violation, and that he only delayed one day in reporting his interaction with law enforcement on May 19, 2020 albeit after pretrial services initiated the inquiry). (*Id*.) He underscores the fact that he is single with no children, and that, if released, he will again secure work at a temporary employment agency and that he "is in the process of securing housing." (*Id*. at 181.) Further, he suggests that the Court can "re-instate his previous conditions, which included curfew

6

monitoring, that will assure the safety of the community and at the same time enable [Mason] to effectively assist his counsel in defending him in the instant case." (*Id.*)

The Court does not share Mason's characterization of his bond violations—which occurred within weeks of his release—as they show a clear unwillingness to follow the Court's directives regarding release. Rather, his most recent behavior is the latest installment in a history of non-compliance that has included parole or supervised release violations and failure to appear in court as ordered in previous cases. (Doc. No. 3 (Pretrial Services Report) at 11, 13.) Given this history and his recent behavior, the Court cannot find that Mason would be compliant on temporary release. This tendency toward non-compliance is especially troubling, given the current global health crisis associated with the COVID-19 pandemic. Courts have found that the increased burden on pretrial services to monitor high-risk prisoners on home detention during this national crisis, as well as the likely risk to law enforcement who would have to take a non-compliant home detainee back into custody [as law enforcement has already had to do in Mason's case], also weigh in favor of denying motions for temporary release. *See, e.g., United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying request for release due to COVID-19, noting that location monitoring puts pretrial services officers at risk); *United States v. Aiad-Toss*, No. 4:19-cr-00521, 2020 WL 1514482 (N.D. Ohio Mar. 30, 2020) (observing that "releas[e] … to home detention and electronic monitoring creates its own risks and undue burden on pretrial services").

Additionally, like the magistrate judge, the Court is even more concerned by the escalating nature of Mason's violations. What started as a verbal altercation with one family member, within days led to allegations of harassment by a sibling and assault against a girlfriend.

The Court's review of the pretrial services' report reveals that Mason has a criminal history that is punctuated with violent crimes, such as aggravated robbery and domestic violence. (Doc. No. 3 at 11–12.) Mason's 2017 domestic violence conviction is especially disconcerting because it involved Mason's strangulation of his then-girlfriend. Accordingly, even if Mason had been able to secure alternative housing (something, to date, he has been unable to do), the Court would find that his release poses a particular danger to family members and significant others, even with electronic monitoring, which has already proven unsuccessful in protecting others and the community.

### III. CONCLUSION

For the forgoing reasons, as well as the reasons set forth in the government's response, the Court finds that the government has demonstrated by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community or other persons. Accordingly, the motion of defendant Mason to revoke the detention order is DENIED.

**IT IS SO ORDERED**.

Dated: August 28, 2020

                                          **HONORABLE SARA LIOI**
                                          **UNITED STATES DISTRICT JUDGE**