UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-cr-287 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| PATRICK MASON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Patrick Mason ("Mason") to revoke the detention order. (Doc. No. 105 (Motion); *see* Doc. No. 102 (Order of Detention).) Mason has filed two supplements in support of the motion. (Doc. No. 106 (Supplement); Doc. No. 107 (Second Supplement).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 108 (Opposition)), and Mason has replied. (Doc. No. 109 (Reply).) For the reasons that follow, the motion, as supplemented, is denied.

**I.    BACKGROUND**

Mason has an unfortunate history of dangerous and reckless behavior, coupled with a fondness for weapons and an unwillingness to follow the rules. On January 29, 2020, police responded to reports that Mason was asleep in his vehicle at a gas station. (Doc. No. 66 (Final Revised Presentence Investigation Report ("PSR")), at 5 ¶ 9.) As officers pulled Mason—who was still asleep and strongly smelling of alcohol—from the vehicle, a loaded 9mm caliber pistol fell from his pants onto the ground. A magazine with a 30-round capacity was located on the floor of

the vehicle. (*Id.*) Mason was charged in federal court with being a felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1 (Complaint).) On June 11, 2020, an indictment issued charging Mason with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of possession of a firearm by a person with a prior misdemeanor domestic violence conviction, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). (Doc. No. 20 (Indictment).)

On May 1, 2020, Magistrate Judge Thomas Parker denied the government's motion for detention and released Mason with conditions, which included electronic monitoring and a curfew. (Doc. No. 10 (Order Setting Conditions of Release), at 2; *see* Minutes of Proceeding [non-document], 5/1/2020.) On May 21, 2020, the Court received a report from United States Pretrial Services that Mason had left his residence without permission and in violation of his curfew, and proceeded to his grandparent's house where he engaged in a verbal altercation with his mother before he left. (Doc. No. 13 (Order Regarding Violation Report), at 1–2.) It was also reported that the following day (May 22, 2020) Mason had attempted to choke his girlfriend and had been harassing his sister, resulting in both women filing police reports. Mason delayed in reporting to U.S. Pretrial Services his interaction with police regarding these incidents. (*Id.* at 2.) A warrant was issued for these bond violations. (Doc. No. 14 (Arrest Warrant).)

On May 26, 2020, Magistrate Judge David A. Ruiz held a bond revocation hearing. (Minutes of Proceedings [non-document], 5/26/2020.) After the hearing was continued at Mason's request, on June 4, 2020, the magistrate judge found Mason had violated the conditions of pretrial release and ordered his bond revoked. (Doc. No. 19 (Order Revoking Bond).) In support of revocation, the magistrate judge cited Mason's inability to abide by his bond conditions, his violent

altercation with his girlfriend, and his history of domestic violence convictions. (*Id*. at 2–3.)

Mason sought revocation of the magistrate judge's detention order. (Doc. No. 31 (Motion to Revoke Detention).) In an order dated August 28, 2020, the Court denied the motion, citing Mason's "tendency toward non-compliance[,]" and his violent criminal history. (Doc. No. 34 (Order), at 7–8.) In response to Mason's suggestion that his bond violations were *de minimis*, the Court observed:

> The Court does not share Mason's characterization of his bond violations—which occurred within weeks of his release—as they show a clear unwillingness to follow the Court's directives regarding release. Rather, his most recent behavior is the latest installment in a history of non-compliance that has included parole or supervised release violations and failure to appear in court as ordered in previous cases. (Doc. No. 3 (Pretrial Services Report), at 11, 13.) Given this history and his recent behavior, the Court cannot find that Mason would be compliant on temporary release.

(*Id*. at 7.) The Court also determined that Mason was a danger to the community—and particularly to his own family—given his violent criminal past and the "escalating nature" of his interactions with "family members and significant others[.]" (*Id*. at 8.) This was true, the Court found, "even with electronic monitoring, which has already proven unsuccessful in protecting others and the community." (*Id*.)

On November 12, 2020, Mason entered a guilty plea to Count 2 of the indictment charging possession of a firearm by a person with a prior misdemeanor domestic violence conviction. (Minutes of Proceedings [non-document], 11/12/2020.) On March 4, 2021, the Court sentenced Mason to a custody term of 58 months, to be followed by 3 years of supervised release. (Doc. No. 67 (Judgment); Minutes of Proceedings [non-document], 3/4/2020.[1])

---

[1] At the sentencing hearing, the government dismissed Count 1, charging a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*Id*.)

3

On June 13, 2024, following the completion of his custody term, Mason began serving his period of supervision. Just weeks later, on July 5, 2024, police were called to investigate a suspicious SUV—with headlights on and the engine running for hours—parked outside a residence. (Doc. No. 91 (Violation Report), at 1.) Upon arrival, officers found Mason asleep in the vehicle with a black handgun next to him. (*Id.*) After repeated attempts to wake him, Mason woke up and was arrested. Mason smelled of alcohol, and officers determined that the weapon in his possession was a loaded 9mm caliber pistol with a live round in the chamber. (*Id.*) A federal warrant was issued for his arrest. (Doc. No. 96 (Arrest Warrant).)

Following his arraignment and initial appearance on the supervised release violations, the government moved for detention. (Minutes of Proceedings [non-document], 7/10/2024.) On July 26, 2024, Magistrate Judge Amanda M. Knapp conducted a detention hearing where the government argued that, based on the nature and circumstances of the offense, Mason posed a danger to the community. (Minutes of Proceedings [non-document], 7/26/2024.) At the conclusion of the hearing, the magistrate judge took the matter under advisement. (*Id.*) Mason was remanded to the temporary custody of the U.S. Marshals, and the matter was stayed pending outcome of the state case. (*Id.*)

In an order dated August 7, 2024, the magistrate judge granted the government's motion, finding that the weight of the evidence was suggestive of dangerousness, "given Mr. Mason's near-immediate return to the same dangerous criminal behavior that was the basis for his underlying conviction," and ordered him detained. (Doc. No. 102 (Order of Detention), at 6.) The magistrate judge ultimately determined that Mason had failed to meet his burden of establishing by clear and convincing evidence that he will not flee or pose a danger to the community if released. (*Id*. at 7–

4

8.)

In the present motion, Mason underscores the fact that he has "a place to live, a stable job, strong family support, and has demonstrated compliance with the rules while in the halfway house and on house arrest." (Doc. No. 105, at 1.) He argues that there are a "combination of release conditions [that] will reasonable assure his appearance and the community's safety," which he suggests would include "home detention, location monitoring, maintain employment, participation in substance abuse treatment, and the custody of a third-party custodian." (*Id*.)

## II. LAW AND DISCUSSION

"A person held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 32.1(a)(1). "The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." Fed. R. Crim. P. 32.1(a)(6). Under § 3143(a)(1), the person must "be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(a)(1). "The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. P. 32.1(a)(1)(6).

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Under this provision, the district court reviews the magistrate judge's detention order *de novo*. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 716, 110 S. Ct. 2072, 109 L. Ed. 2d 720 (1990); *United States v. Legg*, 211 F.3d 1271 (Table), 2000 WL 553990,

at *1 (6th Cir. Apr. 28, 2000); *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (When the court reviews a magistrate judge's detention order, it "acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." (citation omitted)). The factors that guide the court's review are outlined in 18 U.S.C. § 3142(g) and include the following: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person as to dangerousness, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

As part of its *de novo* review, the Court has reviewed the Violation Report (Doc. No. 91), the Superseding Violation Report (Doc. No. 94), the Order of Detention (Doc. No. 102), the transcript from the detention hearing (Doc. No. 104), the Barberton Police Department Report from Mason's arrest (Doc. No. 110-1 (Hearing Ex. 1)), the police body camera still photograph from Mason's arrest (Doc. No. 110-2 (Hearing Ex. 3)), the parties' briefing and supplements (Doc. Nos. 105–09), the presentence report (Doc. No. 66), and other relevant documents and filings in this case. Mason has not proven by clear and convincing evidence that he is not likely to pose a danger to the safety or any other person or the community if released on bond.

Beginning with the first factor, the nature and circumstances of the charged supervised release violations are serious and are nearly identical to the underlying federal conviction. Once again, Mason was found in illegal possession of a loaded weapon, asleep in a vehicle with the motor running after having consumed alcohol. Additionally, like the underlying offense, the alleged violations occurred within weeks of Mason's release from custody. The Court shares the magistrate judge's concern that this repeated, dangerous behavior, occurring so soon after Mason

6

was placed on supervised release, demonstrates an unwillingness or inability to abide by any terms of release and refrain from possessing weapons. This factor clearly weighs in favor of detention.

The second factor—weight of the evidence—also supports detention. This "factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citation omitted). The weight of the evidence is clearly suggestive of Mason's dangerousness, as it appears that he continues to employ a dangerous combination of alcohol, vehicles, and loaded weapons in public. While Mason notes that he was cooperative with authorities once he was awakened (*see* Doc. No. 109, at 3), it is alleged he smelled of alcohol and the police had difficulty waking him, and, most importantly, while he slept in a vehicle with the engine running, he left a load weapon unattended next to him. (Doc. No. 91, at 1.) The evidence of dangerousness weighs heavily in favor of detention.

Mason's history and characteristics—the third factor—on the whole, also favor detention. Under this factor, the Court has considered Mason's family and community support, as reflected in several letters of support (*see* Doc. Nos. 106, 107, and attachments), his employment and the fact that his employer has indicated that he may return to his job if he is released, and his compliance with the terms and conditions imposed at a halfway house and on house arrest. (Doc. No. 105, at 1.) But the Court must also consider Mason's other characteristics, including his criminal history, and his history of parole and supervised release violations.

As the Court has observed on numerous occasions, Mason has "a criminal history that is punctuated with violent crimes," including robbery, menacing, and domestic violence. (*See* Doc. No. 34, at 8 (citing Doc. No. 3, at 11–12)); *see also* Doc. No. 66, at 8–13 ¶¶ 29–44.) In fact, at sentencing, the Court emphasized that, "[a]t the age of 29, [Mason] scores as an alarming criminal

history category V, which, of course, is troubling." (Doc. No. 81 (Transcript from Sentencing Hearing), at 62.)[2] Mason also has a history of supervised release and bond violations. (*See, e.g.*, Doc. No. 66, at 8 ¶ 29, 11 ¶ 37.) Prior terms of imprisonment, including the recent custody term in this case, have failed to impress upon Mason the need to conform his behavior and obey the law. And while his residence at a halfway house may have been incident free, it now appears that within weeks of being placed on supervised release, he has engaged in the same criminal conduct as his underlying offense.

Finally, the Court must consider the fourth factor, the nature and seriousness of the danger to any person and to the community. Mason has a history of disturbing and violent interactions with his family and significant others. While Mason notes that his 2020 interactions with his mother and sister that supported his bond violations were not "physical" (*see* Doc. No. 109, at 1), he forgets that his girlfriend reported to police that he had tried to choke her and smother her with a pillow. (Doc. No. 13, at 2.) Such conduct is consistent with Mason's history of domestic violence. (*See, e.g.*, Doc. No. 66, at 11 ¶ 37.) Mason stresses his community support, including the support of his employer. Yet, based on the evidence offered at the detention hearing, being gainfully employed has not prevented Mason from engaging in conduct that has led to the filing of the instant superseding violation report. Like the first three factors, this final factor favors detention.

---

[2] In his reply, Mason points out that "none of his prior convictions are countable felony crimes of violence under the Sentencing Guidelines." (Doc. No. 109, at 2.) While none of his convictions may meet the definition of a "crime of violence" for purposes of enhancement, many of his crimes involved the use of weapons and/or physical force against another person, including a domestic violence conviction for physically assaulting his girlfriend by strangulation, leaving bruising on her body. (*See, e.g.*, Doc. No. 66, at 11–12 ¶ 37.) In all, Mason criminal history scored 11 criminal history points and resulted, as already noted, in a criminal history category of V. (*Id.* at 14 ¶ 45.)

The Court has also considered whether less restrictive means, such as electronic monitoring and home detention, would ensure the safety of others and the community. Prior use of such mechanisms, however, has proven unsuccessful, and the Court has serious doubts that Mason would comply with any condition or combination of conditions the Court might impose. Ultimately, the Court finds, pursuant to Rule 32.1(a)(6), that Mason has failed to show that he does not pose a danger to the safety of any other person or the community if released. His motion to revoke detention is denied.

**IT IS SO ORDERED**.

Dated: October 22, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**